UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ADRIAN DEAN DUTCHIE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 14-088-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| J. C. HOLLAND, Warden | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Adrian Dean Dutchie is currently confined by the Bureau of Prisons ("BOP") at the Beaumont Medium Federal Correctional Institution ("FCI"), in Beaumont, Texas.[1] Dutchie has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the BOP has improperly calculated the term of his two federal sentences. [Record No. 1] Respondent J. C. Holland, Warden of USP-McCreary, has filed a Response to the petition. [Record No. 8]

Between early December 2014 and late April 2015, Dutchie was given two extensions of time in which to file a reply to the Warden's response. Ultimately, the Court extended Dutchie's deadline to May 11, 2015. [*See* Orders, Record Nos. 9 and 13.] Despite these liberal extensions, Dutchie did not file a reply within the time allowed. Days before his May

---

1   When Dutchie filed this habeas proceeding in April 2014, he was confined in the United States Penitentiary-McCreary, located in Pine Knot, Kentucky. He was later transferred to the USP-Tucson, located in Tucson, Arizona. [*See* Record No. 14-1, p. 1; Record No. 16-1, p. 1.] The Clerk of the Court mailed a copy of the July 1, 2015 Order [Record No. 16] to Dutchie at USP-Tucson, but that mailing was returned as undeliverable on July 17, 2015. [*See* Record No. 17.] Dutchie has not informed the Court of his current address as he was instructed to do [Record No. 4, p. 5, ¶ 3]. According to the BOP's website, Dutchie is now confined in the Beaumont Medium FCI. *See* http://www.bop.gov/inmateloc/ (last visited on Aug. 5, 2015, as to Dutchie, BOP Register No. 04185-081).

-1-

11, 2015 deadline was to expire, Dutchie requested a third extension [Record No. 14] which the Court denied. [Record No. 15] On June 26, 2015, Dutchie requested a fourth extension [Record No. 16] which was also denied. [Record No. 17] Because Dutchie has waived his right to file a reply to the Warden's Response, the Court will address the merits of Dutchie's § 2241 petition without the benefit of a reply.

## BACKGROUND

In October 1992, Dutchie was charged with second degree murder in violation of 18 U.S.C. § 1111. *United States v. Adrian Dean Dutchie*, No. 2:92-CR-260-DS-1 (D. Utah, 1992). He subsequently pleaded guilty to the offense and, on March 22, 1995, was sentenced to a 327-month prison term of imprisonment followed by a 60-month term of supervised release. The Ninth Circuit remanded Dutchie's sentence but, on remand, the district court imposed the same sentence.

On January 23, 1996, Dutchie was indicted in a California federal court for Possession of a Prohibited Object by an Inmate in a Federal Correctional Institution in violation of 18 U.S.C. § 1791(a)(2). *United States v. Adrian D. Dutchie*, No. 2:96-CR-58-GHK-1 (C. D. Cal. 1996). Dutchie pleaded guilty to the offense. On May 21, 1996, he received an 18-month prison sentence which was ordered to run consecutively to his 327-month sentence resulting from his Utah conviction.

Dutchie alleged that the BOP had not applied all of the statutory good conduct time credits ("GCTC") to which he is entitled. He contends that he was improperly denied a total of 588 days of GCTC based on disciplinary infractions incurred between 1994 and 2013. Based on his calculations, Dutchie argues that he should complete service of his two federal sentences in either late 2014 or early 2015. [Record No. 1, p. 4]

The Warden responds that the BOP has properly calculated the amount of time which Dutchie must serve in federal prison. The Warden relies on Alan Ray's sworn Declaration dated September 24, 2014. [Record No. 8-1] Ray is the Management Analyst at the BOP's Designation and Sentence Computation Center in Grand Prairie, Texas, and has worked in the area of inmate sentence computations since July 1991. In computing the amount of time which Dutchie must serve on his Utah and California sentences, Ray examined various records including the BOP's Sentence Monitoring Computation Data ("SMCD"), the United States Marshals Prisoner Tracking System, the official conviction records, Sentence Monitoring Good Time Data, Inmate Discipline Data, and the documents from the BOP's Administrative Remedy Generalized Retrieval. Ray has computed the amount of time Dutchie has served or will be required to serve on each of his sentences, and his computations are effective as of September 16, 2014.

Ray explains that the BOP has credited Dutchie's Utah sentence with 893 days of prior custody credit covering the period between October 10, 1992 (the date of Dutchie's arrest in Utah) through March 21, 1995, (the day before Dutchie was sentenced in the Utah district court). [Record No. 8-1, p. 3, ¶¶ 6–8] Ray bases his opinion on the SMCD as of September 16, 2014, [Record No. 8-1, p. 62], which reflects that the BOP has determined that Dutchie began serving his Utah sentence on March 22, 1995 (*see* "Date Computation Began" entry) and that the BOP has applied 893 days of pre-sentence credit to that sentence (*see* "Total Prior Credit Time . . . 893" entry). Based on Ray's Declaration and the BOP's documentation, the Warden disputes Dutchie's assertion that the BOP has divested him of his pre-sentence credits, arguing that the BOP has properly applied all 893 days of pre-sentence, prior-custody credits.

Ray states that during the three-year period between October 11, 1992, and October 10, 1995, Dutchie was eligible to earn 162 days of GCTC, even though most of that period consisted of pre-sentence/prior custody credit. However, Dutchie only earned (or became "vested" in) 108 days of GCTC because he was convicted of two disciplinary infractions which resulted in the loss of 54 days of GCTC.[2] [Ray Decl., Record No. 8-1, pp. 2–3, ¶¶ 6–8]

Ray explained that, regarding the Utah sentence, Dutchie had a projected release date of May 1, 2018, which was contingent on Dutchie's institutional behavior remaining satisfactory. [*Id*., p. 3-4, ¶¶ 9–10] Ray states that if Dutchie is convicted of any future prison violation(s), and if the conviction results in the forfeiture of additional GCTC, the May 1, 2018, projected release date for the Utah conviction will be extended. [*Id*., p. 3, ¶ 9] Ray further explains that if the May 1, 2018, projected release date went into effect, Dutchie would then begin serving his consecutive 18-month California sentence on that same date and, if his institutional conduct was satisfactory during the time he was serving the California sentence, he would be released from the BOP's custody on August 22, 2019. [*Id*., pp. 3-4, ¶¶ 9-10; p. 2, ¶ 2; p. 4, ¶ 10]

Notably, however, Ray's Declaration is dated *September 24, 2014*, and the Warden's response (which relies on Ray's Declaration) was filed on November 7, 2014 -- over nine months before this Memorandum Opinion and Order. When those documents were prepared and filed, Dutchie's projected release date on his Utah sentence was May 1, 2018, and the

---

2   Ray explains that Dutchie was actually ordered to forfeit **67** days of GCTC between October 10, 1994, and October 10, 1995 (because of two institutional/disciplinary convictions), but that pursuant to BOP Program Statement 5880.28, *Sentence Computation Manual (CCCA of 1984)*, only a maximum of **54** days can be disallowed for any one-year time period. [*Id*., pp. 2-3, ¶ 6]

projected release date on his consecutive California sentence was August 22, 2019. However, the situation has changed since September 24, 2014 and November 7, 2014. The Court has recently reviewed Dutchie's information on BOP's website, which shows that Dutchie's final release date has been extended from August 22, 2019, to **October 7, 2019**. *See* http://www.bop.gov/inmateloc/ (last visited on Aug. 5, 2015, as to Dutchie, BOP Register No. 04185-081).

Given this information, it appears likely that *after* Ray signed his Declaration in September 2014, and *after* the Warden filed his Response on November 7, 2015, Dutchie was required to forfeit additional GCTC. Dutchie's projected release of May 1, 2018 (regarding his Utah sentence) has been extended, and the corresponding projected release of August 22, 2019 (regarding his consecutive California sentence) has also been extended.

Ray explains that between October 11, 1992 and September 16, 2014, Dutchie earned 373 days of GCTC, in which he has a vested interest, out of a possible total of 1,134 days of GCTC. [Record No. 8-1, pp. 2-3, ¶ 6] If Dutchie maintains good institutional behavior, he could earn 619 more days of GCTC by the time he serves his Utah sentence. [Record No. 8-1, pp. 3-4, ¶ 9; *see also* SMCD as of September 16, 2014, p. 62 ("Total GCT Earned and Projected" entry)] Attached to Ray's Declaration is the BOP's Sentence Monitoring Good Time Data as of September 16, 2014 [Record No. 8-1, p. 24], which illustrates Ray's calculations using vertical and horizontal columns.

The columns on left side of the page show that each year, from October 11 to the following October 10, Dutchie was eligible to earn a total of 1,134 days of GCTC, starting on October 11, 1992, through September 16, 2014, at the rate of 54 days of GCTC per year. [*See id.*, "Max Possible," "DIS," and "FFT" entries.] The column to the immediate right lists

the specific amounts of GCTC which Ray was ordered to forfeit each year due to his disciplinary convictions. [*See id.*, "Actual Totals," "DIS," and "FFT" entries.] As Ray explains, however, the maximum amount of GCTC which the BOP can deduct is 54 days per year. The column on the right side of the page lists the amount of GCTC in which Ray became vested every year between October 11, 1992 and September 16, 2014. [*Id.*, "Vested Amount" column][3]

The summary at the bottom of the document reflects that Ray has earned, or has become "vested" in, 373 days of GCTC, which includes the 108 days of GCTC that Dutchie earned during most of the pre-sentence/prior custody term of his federal incarceration (between October 11, 1992, and October 10, 1995). [*See id.*, "Total Earned Amount . . . 373" entry.] That summary also indicates that Dutchie can earn a total of 619 days of GCTC. [*See id.*, "Total Earned and Projected Amount . . . 619" entry.] Thus, if Dutchie serves the remainder of his Utah sentence without disciplinary incident, he will have earned 246 more days of GCTC, to be added to the 373 days of GCTC in which he has already become vested.

Ray explains that a BOP inmate is eligible to earn 54 days of GCTC each year if he or she maintains good institutional behavior, but that between October 1994 and September 16, 2014, Dutchie did not maintain satisfactory institutional behavior. [Record No. 8-1, p. 4, ¶¶ 11–12; ¶ 14] During that twenty-year period, Dutchie was involved in 77 different disciplinary episodes, most of which led to disciplinary convictions. As a result of many of those disciplinary convictions, Dutchie was ordered to forfeit, and has since forfeited, 761

---

3  This document appears to contain the same breakdown of Dutchie's earned and forfeited GCTC that is set forth in the BOP's Sentence Monitoring Good Time Data as of January 21, 2014 [Record No. 1-1, p. 2], which Dutchie attached to his § 2241 petition.

days of GCTC. [*Id*., ¶¶ 12–13]. The specific details of Dutchie's numerous disciplinary convictions, such as the charges, disposition, and resulting loss of GCTC, are set forth in "Attachment 5" to Ray's Declaration. [*See* BOP's *Inmate Discipline Data, Chronological Disciplinary Record*, Record No. 8-1, pp. 25–47.]

Dutchie did not file administrative appeals of the numerous disciplinary convictions that formed the basis of his forfeiture of GCTC under the BOP's administrative remedy process set forth in 28 C.F.R. § 542.15. [Record No. 8-1, p. 4, ¶ 11] Ray points to the BOP's documentation which reveals that during Dutchie's 22-year confinement in various BOP facilities, Dutchie filed only **one** administrative remedy as to a disciplinary hearing in 1999, Remedy No. 188831-F1.[4] Ray explains that other than filing that one, subsequently-rejected administrative remedy in June 1999, Dutchie took no other steps to administratively challenge any of his other numerous disciplinary convictions. [*Id*.]

In his response, the Warden asserts that Dutchie was free to challenge his numerous disciplinary convictions under the BOP's administrative remedy regulations; that Dutchie failed to exhaust and pursue his administrative appeal rights; and that having failed to exhaust his available administrative remedies according to the BOP's regulations, Dutchie has waived the right to collaterally challenge the deduction of the 761 days of his GCTC in this § 2241 habeas proceeding.

---

4     Ray states that on June 16, 1999, Dutchie tried to appeal the Report filed by a Disciplinary Hearing Officer ("DHO"), by submitting a BP-9 "Request for Administrative Remedy" at the institution where he was confined. The remedy request was denied because Dutchie had filed it at the wrong level. Ray Decl. [Record No. 8, p. 6, n. 2]; *see also* Attachment B, "Administrative Remedy Generalized Retrieval, [Record No. 8-1, pp. 9-11]

## DISCUSSION

Based on Ray's detailed Declaration and the SMCD as of September 16, 2014, [Record No. 8-1, p. 62], and Sentence Monitoring Good Time Data as of September 16, 2014, [*id*., p. 24], the Warden has sufficiently established that the BOP has properly calculated the time which Dutchie must serve on his Utah sentence; has applied all pre-sentence credits (893 days) to which Duchie is entitled; has credited the proper amount of GCTC (373 days thus far) to his Utah sentence; and has deducted the proper amount GCTC (619 days) from that sentence. The Warden's Response and attached documentation, including Alan Ray's sworn Declaration, support the following conclusions:

 (a)  the Utah Sentence commenced on March 22, 1995, the date on which it sentence was imposed;

(b)  the BOP has credited Dutchie's Utah sentence with 893 days of pre-sentence/prior credit custody to which Dutchie is entitled, *see id.,* "Total Prior Credit Time….893" entry;

(c)  as of September 16, 2014, Dutchie had earned 373 days of GCTC but had forfeited 761 days of GCTC;

(d)  Dutchie is projected to complete his Utah sentence on May 1, 2018;[5] and,

(e)  assuming that Dutchie completes his Utah sentence on May 1, 2018, he will have earned a **total** of 619 days of GCTC.

The Court has compared the BOP's year-by-year breakdown of earned and forfeited GCTC set forth in the Sentence Monitoring Good Time Data as of September 16, 2014 [Record No. 8-1, p. 24], with the BOP's detailed itemization of Dutchie's numerous disciplinary convictions which resulted in the loss of GCTC, all of which are set forth in

---

5  Again, this date may have subsequently been extended given the information about Dutchie's release date listed on the BOP's website as of August 5, 2015.

detail in Attachment 5 [*Id*., pp. 25-47] to Ray's Declaration. The Sentence Monitoring Good Time Data as of September 16, 2014 shows the amount of GCTC which Dutchie was required to forfeit each year between October 11 and October 10 of the following calendar year, starting on October 11, 1992 and continuing until October 10, 2013.[6] With the exception of two consecutive years (October 11, 2003, to October 10, 2004, and October 11, 2004, to October 10, 2005), the GCTC forfeiture amounts listed in the Sentence Monitoring Good Time Data as of September 16, 2014, correspond **exactly** to the amounts of forfeited GCTC enumerated in Attachment 5.

Regarding the one-year period between October 11, 2003, and October 10, 2004, the Sentence Monitoring Good Time Data as of September 16, 2014 [Record No 8-1, p. 24] states that Dutchie was ordered to forfeit 130 days of GCTC, but the amounts of forfeited GCTC listed for that period of time in Attachment 5 appear to total only 116 days of forfeited GCTC. [*See id.* pp. 33–35 (listing in reverse order six separate disciplinary convictions resulting in forfeited GCTC between April 22, 2004 and August 2, 2004).] Even so, that 14-day discrepancy has no actual, detrimental effect on Ducthie, because as previously explained, whether the amount of GCTC ordered to be forfeited "on paper" was 116 or 130, the actual amount of GCTC which Dutchie **actually** forfeited during that one-year period was only **54** days.

Regarding the next year, between October 11, 2004 and October 10, 2005, the Sentence Monitoring Good Time Data as of September 16, 2014 states that Dutchie was

---

6 Dutchie did not lose any GCTC until the year between October 11, 1994, and October 10, 1995, when he was ordered to forfeit 67 days of GCTC "on paper," but even so the BOP was allowed to deduct only the maximum of **54** days of GCTC for that period. Further, Dutchie enjoyed three full years in which he did not forfeit *any* GCTC: (1) the year between October 11, 2002, and October 10, 2003; (2) the year between October 11, 2008, and October 10, 2009; and (3) the year between October 11, 2009, and October 10, 2010. [*See* Record No. 8-1, p. 24.]

required to forfeit 68 days of GCTC, but the amounts of forfeited GCTC listed for that period of time in Attachment 5 appear to total 82 days, not 68. [*See* Record No. 81, pp. 32-33, (listing in reverse order four separate disciplinary convictions resulting in forfeited GCTC, between January 1, 2005 and October 9, 2005).] Again, this 14-day discrepancy has no actual, real effect on Dutchie's Utah sentence, because whether the amount of GCTC ordered to be forfeited "on paper" was 68 or 82, the actual amount of GCTC which Dutchie **actually** forfeited during that one year was only **54** days.[7]

Simply put, the BOP's calculations of deducted GCTC set forth in Sentence Monitoring Good Time Data as of September 16, 2014 [Record No 8-1, p. 24] "add up." Dutchie lost **54** days of GCTC between October 1994 and October 1995; **10** days of GCTC between October 1995 and October 1996; and **34** days of GCTC between October 1996 and October 1997. Those amounts result in **98** days of forfeited GCTC.

During the next eleven years, between October 1997 and October 2008, Dutchie lost 54 days of GCTC per year (although most of the listed amounts were higher than 54); that amount, multiplied by ten (10) years, yields a forfeiture amount of **540** days. Dutchie lost no GCTC during the next two consecutive years, between October 2008 and October 2010, but his good institutional conduct ended between October 2010 and October 2011, during which time he lost another **54** days of GCTC (identified as "109"). Between October 2011 and October 2012, Dutchie lost **42** days of GCTC; and between October 2012 and October 2013, Dutchie lost **27** days of GCTC. Adding the amounts of 98, 540, 54, 42, and 27 yields a total

---

[7] The two 14-day discrepancies between October 2003 and October 2004, and between October 2004 and October 2005, effectively "cancel" each other. The actual totals of forfeited GCTC, taken from the disciplinary incidents listed in Attachment 5 reflect that Dutchie was ordered to forfeit 198 days of GCTC during those two years; the entries for these same two years on the Sentence Monitoring Good Time Data as of September 16, 2014 also total 198 days (130 days plus 68 days). Thus, the same result of 198 days is reached.

of **761** days of forfeited GCTC, the exact amount which the BOP has deducted from Dutchie's Utah sentence. Thus, the BOP's calculations of forfeited GCTC are correct.

Ray explains that the BOP projects that Dutchie will earn 619 days of GCTC toward his Utah sentence, based on the assumption that Dutchie would stay out of trouble and not incur additional disciplinary convictions which could result in the loss of additional GCTC. Ray's sworn Declaration and its attachments also confirm that if Dutchie had remained incident-free, he would have begun serving his consecutive California sentence on May 1, 2018, the date on which he was to have completed service of his Utah sentence. [*See* SMCD as of September 16, 2014, Record No. 8-1, p. 65.] That document also projects that Dutchie is eligible to earn a total of 70 days of GCTC on his California sentence, and assuming that he served his California sentence without prison infractions resulting in the loss of GCTC, he would complete that sentence on August 22, 2019. *Id.* It appears, however, that Dutchie has forfeited more GCTC since the Warden filed his response, as the BOP's website information of August 5, 2015, indicates that the Dutchie's release date has now been extended to **October 7, 2019**. Even so, the apparent extension of Dutchie's final release date to October 2019 does not change or adversely impact the accuracy of the BOP's calculations set forth in the submissions attached to Warden's Response filed on November 7, 2014.

Dutchie claims in his petition that the BOP has been (or is) improperly deducting 588 days of earned and vested GCTC because of his past disciplinary convictions. But as the Warden correctly notes, the administrative remedy process available to a federal prisoner challenging the denial of GCTC is set forth in 28 C.F.R. § 542.15,[8] and Dutchie's time for

---

8    The BOP's regulations set forth the procedures for appealing a prison disciplinary conviction. A federal inmate challenging a conviction and sanction imposed by a DHO does not submit a BP-9 remedy

-11-

challenging the forfeiture of his GCTC has passed without a valid appeal of any of his disciplinary convictions. Thus, the BOP has properly deducted 761 days of GCTC from Dutchie's Utah sentence.

It is well-settled that federal prisoners must exhaust their administrative remedies before they file a § 2241 petition. *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006); *Little v. Hopkins*, 638 F.2d 953, 953–54 (6th Cir. 1981). The "prison's requirements . . . define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). To properly exhaust, the prisoner must "make full use of the prison grievance process." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006) (discussing exhaustion in the Prison Litigation Reform Act); *Fazzini*, 473 F.3d at 232 n.3 (noting applicability of *Woodford* in the habeas context). Proper exhaustion requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 91 (internal quotation marks omitted).

Exhaustion serves several policy goals. It "promotes efficiency" by creating a record and gives the BOP "an opportunity to correct its own mistakes." *Fazzini*, 473 F.3d at 232 (quoting *Woodford*, 548 U.S. at 89). The BOP "should be given the opportunity to consider the application of its policy to [petitioner's] claim before the matter is litigated in the federal courts." *Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001) (quoting *Taylor v. United States*, 62 F.3d 1418 (6th Cir. 1995) (unpublished table decision)). Where prisoners have

---

request at the institutional level, but instead must appeal the decision to the BOP Regional Office for the region where he is confined. *See* 28 C.F.R. §§ 542.15(a), 542.14(d)(2). If the Regional Office rejects the appeal for "correctable" reasons, it must inform the inmate of the problem and provide him or her reasonable time to correct and resubmit the appeal. 28 C.F.R. § 542.17(b). If the Regional Office does not allow the inmate an opportunity to correct the appeal, he or she can appeal the rejection to the Central Office. 28 C.F.R. § 542.17(c). If the inmate is dissatisfied with the Regional Office's substantive response to his appeal, he can submit a BP-11 appeal to the BOP's Central Office within thirty calendar days. 28 C.F.R. § 542.15(a).

disregarded the BOP's procedural requirements for appealing an adverse administrative response, they have failed to properly exhaust their administrative remedies. *See*, *e.g.*, *Smith v. Zuercher*, No. 7:08-CV-229-KKC, 2009 WL 499112, at *3 (E.D. Ky. Feb. 27, 2009).

To the extent that Dutchie attempts to collaterally attack any or all of his numerous disciplinary convictions which have resulted in the loss of 761 days of his GCTC, he cannot proceed. Ray's sworn Declaration and the attached documentation from the BOP reflect that Dutchie has failed to exhaust his claims challenging the loss of 761 days of GCTC. During the past twenty years, Dutchie did not appeal **any** of his numerous disciplinary convictions pursuant to the BOP's administrative remedy process. Dutchie offers nothing to controvert the Warden's submissions which verify that (except for submitting one improperly directed remedy request in June 1999) he did not otherwise attempt to administratively appeal **any** of his disciplinary convictions which date back to 1994.

"Federal prisoners who procedurally default on their administrative claims must demonstrate cause and prejudice for the omission." *Wade v. Perez*, 14 F. App'x 330, 331 (6th Cir. 2001) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Sanchez v. Miller*, 792 F.2d 694, 697–99 (7th Cir. 1986)). Dutchie broadly claims in his § 2241 petition that the BOP has improperly deprived him of earned GCTC, but he has submitted nothing to support his assertion that the forfeiture of his GCTC was improper, nor has he provided any reasons for defaulting on his administrative appeal rights.

Because Dutchie has not established cause for failing to administratively appeal *any* of his disciplinary convictions, he cannot collaterally challenge the deduction of 761 days of his GCTC in this § 2241 habeas proceeding. The BOP has applied 893 days of pre-sentence

credit to Dutchie's Utah sentence, and its calculation of his Utah sentence is documented and supported in all respects.  *See Moscato*, 98 F.3d at 760.

## CONCLUSION

Based on the record before the Court, the BOP has correctly calculated Dutchie's federal sentence.  Dutchie has not appealed his disciplinary convictions and loss of GCTC through the BOP's administrative remedy process.  Accordingly, it is hereby

**ORDERED** as follows:

1.The Clerk of the Court shall **SEND** a copy of this Memorandum Opinion and Order; the attached Judgment; copies of Record Nos. 16 and 17; and a copy of the docket sheet (current through this date), to Petitioner Adrian Dean Dutchie, at the following address:

>Adrian Dean Dutchie
>BOP Register No. 04185-081
>FCI Beaumont Medium
>Federal Correctional Institution
>P.O. Box 26040
>Beaumont, Texas 77720

2.Dutchie's 28 U.S.C. § 2241 petition for a writ of habeas corpus [Record No. 1] is **DENIED**;

3.The Court will enter an appropriate Judgment this date; and

4.This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This 13th day of August, 2015.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge